1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELSY VERONICA DEL CID QUIJADA; JOSE HERNANDEZ HERNANDEZ; SERGIO JAIME LOPEZ; and FARZANEH RAMENAZI,<br><br>                                        Petitioners,<br><br>v.<br><br>CHAD T. WOLF, Acting Secretary of Homeland Security; MATTHEW T. ALBENCE, Deputy Director and Senior Official Performing Duties of the Director of U.S. Immigration and Customs Enforcement; GREGORY J. ARCHAMBEAULT, San Diego Field Office Director, Immigration and Customs Enforcement; JAMES DOBSON, Otay Mesa Detention Center Officer in Charge, Immigration and Customs Enforcement; CHRISTOPHER J. LAROSE, Senior Warden, Otay Mesa Detention Center,<br><br>                                        Respondents. | Case No.:  3:20-cv-00744-WQH-AGS<br><br>**ORDER** |

1

1  HAYES, Judge:

2      The matters before the Court are the Motion for a Temporary Restraining Order filed

3  by Petitioner Sergio Jaime Lopez (ECF No. 2) and the Motion to File Documents Under

4  Seal filed by Respondents (ECF No. 6).

5  **I.   PROCEDURAL BACKGROUND**

6      On April 19, 2020, Petitioners Jose Hernandez Hernandez, Elsy Veronica Del Cid

7  Quijada, Farzaneh Ramenazi, and Sergio Jaime Lopez initiated this action by filing a

8  Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241.  (ECF No. 1).  Petitioners

9  allege that they are "immigration detainees at Otay Mesa Detention Center" ("OMDC").

10  *Id*. at 5.  Petitioners "request that this Court order their immediate release to their sponsor"

11  due to "Respondents' inaction on COVID-19 and the increasing chaos at [OMDC] …." *Id*.

12  at 6.

13      On the same day, Petitioner Lopez filed a Motion for a Temporary Restraining

14  Order.  (ECF No. 2).  Petitioner Lopez requests "a temporary restraining order enjoining

15  the Respondents from continuing to detain him and ordering his immediate release from

16  immigration detention to a hospital to treat his emergent COVID-19 disease." *Id*. at 2.

17      On April 22, 2020, Respondents filed a Response in opposition to the Motion for a

18  Temporary Restraining Order filed by Petitioner Lopez.  (ECF No. 5).  On the same day,

19  Respondents filed a Motion to File Documents Under Seal.  (ECF No. 6).

20      On April 28, 2020, Petitioner Lopez filed a Reply.  (ECF No. 15).

21  **II.   FACTS**

22      Petitioner Lopez is a 33-year-old citizen of Nicaragua.  On August 7, 2019,

23  Petitioner Lopez entered the United States without inspection and was apprehended by U.S.

24  Border Patrol.  On the same day, Petitioner Lopez applied for asylum and was placed in

25  the Migrant Protection Protocols program ("MPP program").  On the same day, Petitioner

26  Lopez was given a Notice to Appear before an immigration judge to commence removal

27  proceedings.

28

3:20-cv-00744-WQH-AGS

1    In December 2019, Petitioner Lopez was removed from the MPP program.  Since
2    December 2019, Petitioner Lopez has been detained at OMDC.

3    On March 24, 2020, Petitioner Lopez filed a "humanitarian parole application to
4    [Immigration and Customs Enforcement] seeking [Petitioner] Lopez's release to his aunt,
5    …, a Lawful Permanent Resident who lives in San Francisco and who has agreed to
6    financially and physically sponsor [Petitioner] Lopez during the pendency of his
7    immigration case."  Cargioli Decl. ¶ 10, ECF No. 1-2 at 4.  Immigration and Customs
8    Enforcement has not responded to Petitioner Lopez's request.

9    Before April 13, 2020, Petitioner Lopez's pod was placed under quarantine after a
10   detainee tested positive for COVID-19.

11   On April 13, 2020, Petitioner Lopez was seen by a registered nurse at OMDC.
12   Medical records show that Petitioner Lopez had a temperature of 100.4 degrees and
13   reported feeling chills and fatigue.  Petitioner Lopez denied experiencing a change in
14   breathing pattern, chest pain, cough, pain with inspiration, shortness of breath at rest,
15   shortness of breath with exertion, sputum production, or wheezing.  Petitioner Lopez was
16   provided Ibuprophen and transferred to the Medical Housing Unit (the "MHU").

17   From April 14 to April 20, 2020, Petitioner Lopez was housed in the MHU.
18   Registered nurses and nurse practitioners at the MHU assessed Petitioner Lopez and
19   monitored his temperature multiple times throughout the day.  Medical records show that
20   Petitioner Lopez continued to report feeling chills, fever, sore throat, muscle aches, and a
21   cough.  Petitioner Lopez was provided Acetaminophen and Ibuprophen.

22   On April 17, 2020, Petitioner Lopez tested positive for COVID-19 and was informed
23   by a nurse practitioner that he would continue to be isolated and monitored at the MHU.
24   Registered nurses and nurse practitioners at the MHU continued to assess Petitioner Lopez
25   and monitor his temperature multiple times throughout the day.  Registered nurses and
26   nurse practitioners at the MHU continued to provide Petitioner Lopez with Acetaminophen
27   and Ibuprophen.

28

1    On April 20, 2020, Petitioner Lopez was discharged from the MHU.  Since April 20,

2    2020, Petitioner Lopez has been housed in his pod with other COVID-19-positive

3    detainees.

4    On April 21, 2020, Petitioner Lopez was granted parole by Immigration and

5    Customs Enforcement with a bond set at $10,000.

6    **III.    CONTENTIONS OF THE PARTIES**

7    Petitioner Lopez requests a temporary restraining order enjoining Respondents from

8    continuing to detain him and ordering his immediate release from OMDC to a hospital for

9    COVID-19 evaluation and treatment or, in the alternative, release to his sponsor.  Petitioner

10   Lopez contends that he is likely to prevail on his habeas claim that his continued detention

11   violates his substantive due process rights pursuant to the Fifth Amendment.  Petitioner

12   Lopez asserts that he faces an extreme risk to his health if he remains in detention at OMDC

13   with a confirmed COVID-19 infection.  Petitioner Lopez contends that he faces a risk of

14   irreparable harm from dying in Respondents' custody.  Petitioner Lopez contends that the

15   balance of equities tilts in his favor because there are alternative ways to ensure Petitioner

16   Lopez's participation in removal proceedings.  Petitioner Lopez contends that his release

17   serves the public interest by reducing the risk to other detainees and staff at OMDC.

18   Respondents contend that Petitioner Lopez is unlikely to succeed on his habeas claim

19   and fails to establish irreparable harm.  Respondents assert that Petitioner Lopez's medical

20   condition has been treated and resolved.  Respondents assert that Petitioner Lopez has

21   received adequate medical care at OMDC.  Respondents contend that the balance of

22   equities and public interest do not weigh in Petitioner Lopez's favor.  Respondents assert

23   that there is no medical reason for Petitioner Lopez's transfer to a hospital or release.

24   Respondents assert that there is a strong public interest to ensure Petitioner Lopez appears

25   at his removal proceedings and is repatriated should he be denied relief from removal.

26   **IV.    LEGAL STANDARD**

27   When the non-movant has received notice, as here, the standard for issuing a

28   temporary restraining order is the same as that for issuing a preliminary injunction.  *See*

4

1   *Brown Jordan Int'l, Inc. v. Mind's Eye Interiors, Inc.*, 236 F. Supp. 2d 1152, 1154 (D.

2   Haw. 2002); *Lockheed Missile & Space Co., Inc. v. Hughes Aircraft Co.*, 887 F. Supp.

3   1320, 1323 (N.D. Cal. 1995).  "[A] preliminary injunction is an extraordinary and drastic

4   remedy, one that should not be granted unless the movant, *by a clear showing*, carries the

5   burden of persuasion."  *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis

6   original) (internal quotation marks and citation omitted).  "[T]he burdens [of proof] at the

7   preliminary injunction stage track the burdens [of proof] at trial.  *Gonzales v. O Centro*

8   *Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 429 (2006).

9        To obtain preliminary injunctive relief, a movant must "meet one of two variants of

10  the same standard."  *All for the Wild Rockies v. Pena*, 865 F.3d 1211, 1217 (9th Cir. 2017).

11  Under the first standard, the movant must show "that he is likely to succeed on the merits,

12  that he is likely to suffer irreparable harm in the absence of preliminary relief, that the

13  balance of equities tips in his favor, and that an injunction is in the public interest."  *Id.*

14  (quoting *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)).

15       Under the second standard, the movant must show "that there are serious questions

16  going to the merits—a lesser showing than likelihood of success on the merits," that the

17  "balance of hardships tips *sharply* in the Plaintiff's favor," and that "the other two *Winter*

18  factors are satisfied."  *Id.* (quoting *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281,

19  1291 (9th Cir. 2013)) (emphasis original) (internal quotation marks omitted).  The balance

20  of equities and public interest factors merge "[w]hen the government is a party."  *Drakes*

21  *Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (quoting *Nken v. Holder*,

22  556 U.S. 418, 435 (2009)).  Under the second standard, when the government is a party,

23  the movant must show serious questions going to the merits; a balance of hardships, merged

24  with public interest considerations, tipping sharply in the movant's favor; and a likelihood

25  of irreparable harm absent preliminary relief.

26

27

28

3:20-cv-00744-WQH-AGS

## V.   DISCUSSION

### a.  Likelihood of Success on the Merits

#### i.  Reasonable Relation to Legitimate Government Purpose

Individuals detained pursuant to immigration violations are civil detainees.  *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).  "[U]nder the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law."  *Bell v. Wolfish*, 441 U.S. 520, 535 (1979) (citations omitted).  "*Bell*'s focus on 'punishment' does not mean that proof of intent (or motive) to punish is required for a pretrial detainee to prevail on a claim that his due process rights were violated."  *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015) (emphasis in original).  "Rather, … a pretrial detainee can prevail by providing only objective evidence that the challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose."  *Id*. at 2473-74 (citations omitted).  In other words, conditions are punitive when they "are employed to achieve objectives that could be accomplished in so many alternative and less harsh methods …."  *Jones v. Blanas*, 393 F.3d 918, 932 (9th Cir. 2004) (citation omitted).

Petitioner Lopez contends that his continued detention is not reasonably related to any legitimate governmental goal.  Petitioner Lopez asserts that he "can continue to pursue his immigration case on release, like the thousands of other non-detained immigrants currently in removal proceedings, and [Immigration and Customs Enforcement] can use alternatives to detention to verify that he remains in place."  (ECF No. 2 at 17-18).  Petitioner Lopez contends that "the government's alleged harm (presumably the unsubstantiated risk that [Petitioner] Lopez would abscond) could be nearly entirely mitigated by its employment of alternatives to detention, such as GPS monitoring."  *Id*. at 18.  Respondents contend that Petitioner Lopez's "claim for habeas relief has … been rendered moot" because Petitioner Lopez "has been granted parole upon posting a $10,000 bond and final medical clearance."  (ECF No. 5 at 6).

6

1  The Supreme Court has recognized the detention of individuals pending their
2  removal proceedings as rationally related to the legitimate governmental interest of
3  ensuring their appearance for their deportation proceedings and preventing danger to the
4  community. *See Zadvydas*, 533 U.S. at 690.  The Supreme Court "has recognized detention
5  during deportation proceedings as a constitutionally valid aspect of the deportation
6  process." *Demore v. Kim*, 538 U.S. 510, 523 (2003).  On April 21, 2020, Petitioner Lopez
7  was granted parole with a bond set at $10,000.  Petitioner Lopez challenges the amount of
8  his bond as excessive.

9  The Court of Appeals has stated that courts "may require" the exhaustion of
10  administrative remedies when:

11  (1) agency expertise makes agency consideration necessary to generate a
    proper record and reach a proper decision; (2) relaxation of the requirement
12  would encourage the deliberate bypass of the administrative scheme; and (3)
13  administrative review is likely to allow the agency to correct its own mistakes
    and to preclude the need for judicial review.
14

15  *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017) (quoting *Puga v. Chertoff*, 488
16  F.3d 812, 815 (9th Cir. 2007)).  The Court of Appeals has further stated that

17  If a petitioner fails to exhaust prudentially required administrative remedies,
    then "a district court ordinarily should either dismiss the petition without
18  prejudice or stay the proceedings until the petitioner has exhausted remedies."
19

20  *Id*. (quoting *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011)).  However, "a
21  court may waive the prudential exhaustion requirement if 'administrative remedies are
22  inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture,
23  irreparable injury will result, or the administrative proceedings would be void.'"  *Id*.
24  (quoting *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004)).  Petitioner Lopez fails to
25  set forth evidence demonstrating the exhaustion of administrative remedies or justifying a
26  waiver of the exhaustion requirement.  The Court cannot conclude that Petitioner Lopez's
27  continued detention is not reasonably related to a legitimate governmental objective.

28

1

### ii. Reasonable Safety of Detainees

2     Due process imposes a duty on the government "to assume some responsibility for

3 [the] safety and general well-being" of persons it takes into its custody. *DeShaney v.*

4 *Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 199-200 (1989) (citation omitted). The

5 government can consequently be held liable for a due process violation where a

6 government official affirmatively places individuals, with deliberate indifference to their

7 health or safety, in a position of known danger "which he or she would not have otherwise

8 faced." *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1061 (9th Cir. 2006) (citing

9 *DeShaney*, 489 U.S. at 197, 201). A plaintiff in custody must show that government

10 officials acted in an objectively unreasonable manner that "put the plaintiff at substantial

11 risk of suffering serious harm …." *Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1071 (9th

12 Cir. 2016)). The Supreme Court has held that prison officials cannot "ignore a condition

13 of confinement that is sure or very likely to cause serious illness and needless suffering the

14 next week or month or year." *Helling v. McKinney*, 509 U.S. 25, 33 (1993) (citation

15 omitted).

16     Petitioner Lopez contends that his continued detention violates constitutional

17 requirements imposed on Respondents to ensure his reasonable safety. Petitioner Lopez

18 contends that "Respondents undeniably breached their duty to provide reasonable safety

19 when they failed to take adequate measures to avoid the spread of COVID-19 to

20 [Petitioner] Lopez and to other detainees at [OMDC]." (ECF No. 2 at 14). Petitioner

21 Lopez contends that "Respondents continue to breach their duty to provide both reasonable

22 safety and adequate medical care." *Id*. at 15. Petitioner Lopez contends that, "by not taking

23 such measures, Respondents' actions constituted the *res ipsa* cause of [Petitioner] Lopez's

24 injuries." *Id*. (emphasis in original). Respondents contend that "[t]here is no basis for

25 ordering [Petitioner Lopez's] transfer to a hospital" and "there is no factual basis for

26 [Petitioner Lopez's] Fifth Amendment substantive due process claim …." (ECF No. 5 at

27 6). Respondents assert that Petitioner Lopez "makes generalized and speculative

28 accusations about the quality of medical care provided … at OMDC." *Id*. at 5.

1   Respondents assert that Petitioner Lopez's "medical records are a testament to the

2   extraordinary level of medical care that he has received at OMDC." *Id*.

3        On April 13, 2020, Petitioner Lopez was transferred to the MHU after he was found

4   to have a temperature of 100.4 degrees and reported feeling chills and fatigue.  Petitioner

5   Lopez denied experiencing a change in breathing pattern, chest pain, cough, pain with

6   inspiration, shortness of breath at rest, shortness of breath with exertion, sputum

7   production, or wheezing.  From April 14 to April 20, 2020, Petitioner Lopez was housed

8   in the MHU.  Throughout his stay at the MHU, registered nurses and nurse practitioners

9   assessed Petitioner Lopez and monitored his temperature multiple times throughout the

10   day.  Throughout his stay at the MHU, Petitioner Lopez was provided Acetaminophen and

11   Ibuprophen.  From April 14 to April 17, 2020, Petitioner Lopez continued to report feeling

12   chills, fever, sore throat, muscle aches, and a cough.  On April 17, 2020, Petitioner Lopez

13   tested positive for COVID-19 and was informed by a nurse practitioner that he would

14   continue to be isolated and monitored at the MHU.  On April 20, 2020, Petitioner Lopez

15   was discharged from the MHU.  Since April 20, 2020, Petitioner Lopez has been housed

16   in his pod with other COVID-19-positive detainees.

17        Petitioner Lopez fails to set forth evidence demonstrating a likelihood of success on

18   his claims that Respondents are violating Petitioner Lopez's substantive due process rights

19   by failing to respond to his COVID-19 infection.  Petitioner Lopez fails to set forth

20   evidence demonstrating a substantial risk created by Respondents' alleged indifference.

21   Petitioner Lopez fails to set forth evidence demonstrating that Respondents failed to

22   respond to his COVID-19 infection.  The Court cannot conclude that Respondents

23   abandoned their constitutional duty and exposed Petitioner Lopez to a risk "that is sure or

24   very likely to cause serious illness and needless suffering" in the future.  *Helling*, 509 U.S.

25   at 33.  The Court cannot conclude that Petitioner Lopez is likely to sufficiently state claims

26   for violation of substantive due process.

27

28

1
## b. Irreparable Injury

2    To recover preliminary relief, a moving party must also demonstrate that

3 "irreparable injury is *likely* in the absence of an injunction." *Winter*, 555 U.S. at 22

4 (emphasis in original) (citations omitted). "Issuing a preliminary injunction based only on

5 a possibility of irreparable harm is inconsistent with [the] characterization of injunctive

6 relief as an extraordinary remedy that may only be awarded upon a clear showing that the

7 plaintiff is entitled to such relief." *Id.* (citation omitted). In this case, Petitioner Lopez's

8 mere presence in OMDC is insufficient to demonstrate a likelihood that he will suffer

9 severe illness or death as a result of continued detention. The Court cannot conclude that

10 Petitioner Lopez has shown a likelihood of irreparable harm absent the requested relief

11 based on Respondents' response to Petitioner Lopez's COVID-19 infection.

12
## c. Balance of Equities and Public Interest

13    The balance of equities and public interest factors merge "[w]hen the government is

14 a party." *Drakes Bay Oyster*, 747 F.3d at 1092 (9th Cir. 2014) (citation omitted).

15 Respondents appear to be taking necessary measures to protect the public during this health

16 crisis. The Court cannot find that granting Petitioner Lopez's request for release would be

17 in the public interest given his exposure and absent any established likelihood of

18 constitutional injury.

19
## VI.    CONCLUSION

20    IT IS HEREBY ORDERED that the Motion for a Temporary Restraining Order filed

21 by Petitioner Sergio Jaime Lopez (ECF No. 2) is DENIED.

22    IT IS FURTHER ORDERED that the Motion to File Documents Under Seal filed

23 by Respondents (ECF No. 6) is GRANTED.

24  Dated:  May 4, 2020

25                                      Hon. William Q. Hayes

26                                      United States District Court

27

28