UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELSY VERONICA DEL CID QUIJADA; JOSE HERNANDEZ HERNANDEZ; SERGIO JAIME LOPEZ; and FARZANEH RAMENAZI,<br><br>Petitioners,<br><br>v.<br><br>CHAD T. WOLF, Acting Secretary of Homeland Security; MATTHEW T. ALBENCE, Deputy Director and Senior Official Performing Duties of the Director of U.S. Immigration and Customs Enforcement; GREGORY J. ARCHAMBEAULT, San Diego Field Office Director, Immigration and Customs Enforcement; JAMES DOBSON, Otay Mesa Detention Center Officer in Charge, Immigration and Customs Enforcement; CHRISTOPHER J. LAROSE, Senior Warden, Otay Mesa Detention Center,<br><br>Respondents. | Case No.: 3:20-cv-00744-WQH-AGS<br><br>**ORDER** |

HAYES, Judge:

The matters before the Court are the Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 filed by Petitioners Jose Hernandez Hernandez and Elsy Veronica Del Cid Quijada (ECF No. 1), the Ex Parte Motion for a Temporary Restraining Order filed by Petitioners Jose Hernandez Hernandez and Elsy Veronica Del Cid Quijada (ECF No. 8) and the Motion to File Documents Under Seal filed by Respondents (ECF No. 17).

## I. PROCEDURAL BACKGROUND

On April 19, 2020, Petitioners Jose Hernandez Hernandez, Elsy Veronica Del Cid Quijada, Farzaneh Ramenazi, and Sergio Jaime Lopez initiated this action by filing a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. (ECF No. 1). Petitioners allege that they are "immigration detainees at Otay Mesa Detention Center" ("OMDC"). *Id*. at 5. Petitioners "request that this Court order their immediate release to their sponsors" due to "Respondents' inaction on COVID-19 and the increasing chaos at [OMDC] …." *Id*. at 6.

On the same day, Petitioner Lopez filed a Motion for a Temporary Restraining Order. (ECF No. 2). Petitioner Lopez requested "a temporary restraining order enjoining the Respondents from continuing to detain him and ordering his immediate release from immigration detention to a hospital to treat his emergent COVID-19 disease." *Id*. at 2.

On April 23, 2020, Petitioners Hernandez, Del Cid, and Ramenazi filed an Ex Parte Motion for a Temporary Restraining Order. (ECF No. 8). Petitioners Hernandez, Del Cid, and Ramenazi "request that this Court intervene and order their immediate release" from immigration detention to their sponsors "before they become the next preventable COVID-19 case or fatality." *Id*. at 6.

On May 1, 2020, Respondents filed a Return to the Petition for Writ of Habeas Corpus (ECF No. 1) and a Response in opposition to the Ex Parte Motion for a Temporary Restraining Order (ECF No. 8). (ECF No. 16). On the same day, Respondents filed a Motion to File Documents Under Seal. (ECF No. 17).

On May 4, 2020, the Court denied the Motion for a Temporary Restraining Order filed by Petitioner Lopez (ECF No. 2). (ECF No. 19).

On May 6, 2020, Petitioners Hernandez and Del Cid filed a Reply to the Ex Parte Motion for a Temporary Restraining Order (ECF No. 8). (ECF No. 22).

On May 7, 2020, Petitioner Ramenazi filed a Notice of Voluntary Dismissal for the Petition for Writ of Habeas Corpus (ECF No. 1) and the Ex Parte Motion for a Temporary Restraining Order (ECF No. 8). (ECF No. 24).

On May 8, 2020, Petitioners Hernandez, Del Cid, and Lopez filed a Reply to the Petition for Writ of Habeas Corpus (ECF No. 1). (ECF No. 25).

On May 11, 2020, Petitioner Lopez filed a Notice of Voluntary Dismissal for the Petition for Writ of Habeas Corpus (ECF No. 1). (ECF No. 26).

## II.   FACTS

### a.   Petitioner Hernandez

Petitioner Hernandez is a 36-year-old citizen of El Salvador. On April 29, 2010, Petitioner Hernandez immigrated to the United States.

On July 9, 2014, Petitioner Hernandez was arrested and charged with domestic violence. Petitioner Hernandez was subsequently convicted sentenced to 30 days in LA County Jail and 36 months of probation. On December 16, 2015, Petitioner Hernandez was arrested and charged with vehicle theft. Petitioner Hernandez was subsequently convicted and sentenced to 6 months in jail and 36 months of probation. On January 25, 2016, Petitioner Hernandez was arrested and charged with receipt of stolen property. Petitioner Hernandez was subsequently convicted and sentenced to 16 months in LA County Jail. On March 2, 2016, Petitioner Hernandez was arrested and charged with domestic violence. On April 4, 2016, Petitioner Hernandez was convicted and sentenced to 364 days in LA County Jail.

On August 8, 2016, Petitioner Hernandez was apprehended by Immigration and Customs Enforcement and placed in removal proceedings based on his April 4, 2016 conviction for domestic violence.

On April 24, 2017, the immigration judge denied Petitioner Hernandez's release on bond because he was found to be a danger to the community. Petitioner Hernandez reserved the right to appeal the immigration judge's denial of release on bond.

On June 7, 2017, the immigration judge denied Petitioner Hernandez's application for asylum, application for withholding of removal, and application for cancellation of removal. On the same day, the immigration judge ordered Petitioner Hernandez removed from the United States to El Salvador. Petitioner Hernandez appealed the immigration judge's denials and order of removal to the Board of Immigration Appeals ("BIA").

On the same day, the immigration judge denied Petitioner Hernandez's release on bond because he failed to present changed circumstances. Petitioner Hernandez waived the right to appeal the immigration judge's denial of release on bond.

On October 10, 2017, the BIA affirmed the immigration judge's denial of Petitioner Hernandez's application for asylum, denial of Petitioner Hernandez's application for withholding of removal, and denial of Petitioner Hernandez's application for cancellation of removal. On the same day, the BIA affirmed the immigration judge's removal order and dismissed Petitioner Hernandez's appeal. Petitioner Hernandez appealed the BIA decision to the Court of Appeals.

On January 16, 2018, the immigration judge denied Petitioner Hernandez's release on bond because he was found to be a danger to the community and a flight risk. Petitioner Hernandez reserved the right to appeal the immigration judge's denial of release on bond.

On May 20, 2019, the Court of Appeals remanded the case to the BIA. The Court of Appeals ordered the BIA to assess Petitioner Hernandez's eligibility for asylum and cancellation of removal because Petitioner Hernandez's conviction for receipt of stolen property had been vacated.

On September 10, 2019, the BIA remanded the case to the immigration Judge.

On March 6, 2020, the immigration judge scheduled a hearing to take place on May 22, 2020.

On March 10, 2020, the immigration judge denied Petitioner Hernandez's Motion to Reconsider the earlier bond determination because Petitioner Hernandez failed to present changed circumstances. The immigration judge affirmed that Petitioner Hernandez remains a danger to the community.

On April 6, 2020, Petitioner Hernandez filed a humanitarian "parole request" with the Department of Homeland Security. Cargioli Decl. ¶ 54, ECF No. 1-2 at 12. The Department of Homeland Security has not issued a decision regarding Petitioner Hernandez's request.

On April 13, 2020, Petitioner Hernandez "requested a bond hearing due to COVID-19." *Id*. at ¶ 57, ECF No. 1-2 at 13. Petitioner Hernandez "has not received a response" and has been informed that the court "has not been able to rule on the request, because the physical file is at [OMDC], which is closed." *Id*.

Petitioner Hernandez has not reported any symptoms compatible with COVID-19 during his detention at OMDC. Since January 4, 2020, Petitioner Hernandez's medical appointments have been for health problems unrelated to COVID-19 including medication renewals and shoulder pain.

Petitioner "Hernandez is currently … detained in a section known as the "L pod" with approximately 43 other detainees." Noche Decl. ¶ 4, ECF No. 1-3 at 2. Petitioner "Hernandez … share[s] communal facilities, including showers, eating areas, exercise facilities, and common areas with the 43 other detainees in his pod." *Id*. "These common areas include tables, seating areas, water dispenser, a kiosk for commissary purchases, and telephones." *Id*. Petitioner "Hernandez … reported … that cleaning supplies such as soap and disinfectant were not always available, and that OMDC often experiences shortages of these supplies." *Id*. at ¶ 6, ECF No. 1-3 at 3. "[A]ll detainees were provided with one mask …." *Id*. at ¶ 7, ECF No. 1-3 at 3. "Masks are not mandatory, but optional." *Id*. "[N]ot all detainees or detention guards use masks." *Id*.

### b. Petitioner Del Cid

Petitioner Del Cid is a 22-year-old citizen of El Salvador. On September 5, 2019, Petitioner Del Cid applied for admission into the United States at the San Ysidro Port of Entry. On the same day, Petitioner Del Cid applied for asylum and was placed in the Migrant Protection Protocols program ("MPP program"). On the same day, Petitioner Del Cid was given a Notice to Appear before an immigration judge to commence removal proceedings.

On September 6, 2019, a U.S. Customs and Border Patrol officer found that Petitioner Del Cid was subject to removal and charged with inadmissibility pursuant to 8 U.S.C. § 1182(a)(7)(A)(i)(I). The U.S. Customs and Border Patrol officer found that Petitioner Del Cid was

> not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required by the [Immigration and Nationality] Act, and a valid unexpired passport, or other suitable travel document, or document of identity and nationality as required under the regulations issued by the Attorney General under section 211(a) of the Act.

(Ex. 7 to Respondents' Response, ECF No. 16-1 at 8).

On September 24, 2019, the immigration judge ordered Petitioner Del Cid removed from the United States. On March 6, 2020 Petitioner Del Cid appealed the immigration judge's order of removal to the BIA.

On March 25, 2020, Petitioner Del Cid was seen by a registered nurse at OMDC. Petitioner Del Cid was provided medication and was cleared to return to her housing unit.

On April 13, 2020, Petitioner Del Cid filed a "humanitarian parole request" with the Department of Homeland Security. Cargioli Decl. ¶ 54, ECF No. 1-2 at 12. The Department of Homeland Security has not issued a decision regarding Petitioner Del Cid's request.

On April 14, 2020, Petitioner Del Cid was seen by a registered nurse at OMDC. Petitioner Del Cid was provided medication and was cleared to return to her housing unit.

On April 23, 2020, Petitioner Del Cid was granted parole by Immigration and Customs Enforcement with a bond set at $15,000.

On April 28, 2020, Petitioner Del Cid had a telephonic appointment with a physician assistant regarding medication renewals.

On April 29, 2020, Petitioner Del Cid was seen by a registered nurse at OMDC for a health problem unrelated to COVID-19.

Petitioner "Del Cid's pod houses approximately 82 detainees." *Id*. at ¶ 30, ECF No. 1-2 at 8. Petitioner "Del Cid sleeps in a cell with four detainees and they … share the same bathroom." *Id*. Petitioner "Del Cid … share[s] tables, chairs, telephones, and other common areas with 81 other detainees." *Id*.

### c. Conditions at OMDC

"The [OMDC] has a population within approved capacity and is not overcrowded." Beckhelm Decl. ¶ 13, ECF No. 16-2 at 4. "New admissions to OMDC have been suspended since approximately April 2, 2020, except for one case where there was a critical need." *Id*. at ¶ 8, ECF No. 16-2 at 3. "Because OMDC is not accepting new detainees, and because persons in high-risk groups are generally released, OMDC is now operating at about half capacity." *Id*. ¶ 13, ECF No. 16-2 at 4; *see also* LaRose Decl. ¶ 12, ECF No. 16-5 at 3.

"The [OMDC] has limited professional visits to noncontact visits and suspended in person social visitation and facility hours." Beckhelm Decl. ¶ 15, ECF No. 16-2 at 5; *see also* Farabaugh Decl. ¶ 17, ECF No. 16-3 at 4. "The [OMDC] custody staff is screening all staff and vendors when they enter the facilities including body temperatures." Beckhelm Decl. ¶ 16, ECF No. 16-2 at 5; *see also* Farabaugh Decl. ¶ 18, ECF No. 16-3 at 4.

"Since the onset of reports of … []COVID-19[], [Immigration and Customs Enforcement] epidemiologists have been tracking the outbreak, regularly updating infection prevention and control protocols, and issuing guidance to field staff on screening

and management of potential exposure among detainees." Beckhelm Decl. ¶ 4, ECF No. 16-2 at 3; *see also* Farabaugh Decl. ¶ 8, ECF No. 16-3 at 2-3.

"Those detainees who present symptoms compatible with COVID-19 will be placed in isolation, where they will be tested." Beckhelm Decl. ¶ 9, ECF No. 16-2 at 4; Farabaugh Decl. ¶ 12, ECF No. 16-3 at 3. "In testing for COVID-19, IHSC is also following guidance issued by the Centers for Disease Control (["]CDC["]) to safeguard those in its custody and care." Beckhelm Decl. ¶ 5, ECF No. 16-2 at 3; *see also* Farabaugh Decl. ¶ 9, ECF No. 16-3 at 3. "If testing is positive, they will remain isolated and treated." Beckhelm Decl. ¶ 9, ECF No. 16-2 at 4; Farabaugh Decl. ¶ 12, ECF No. 16-3 at 3. "In case of any clinical deterioration, they will be referred to a local hospital." Beckhelm Decl. ¶ 9, ECF No. 16-2 at 4; Farabaugh Decl. ¶ 12, ECF No. 16-3 at 3.

"In cases of known exposure to a person with confirmed COVID-19, asymptomatic detainees are placed in cohorts with restricted movement for the duration of the most recent incubation period (14 days after most recent exposure to an ill detainee) and are monitored daily for fever and symptoms of respiratory illness." Beckhelm Decl. ¶ 10, ECF No. 16-2 at 4; Farabaugh Decl. ¶ 13, ECF No. 16-3 at 3; *see also* Ivens Decl. ¶ 15, ECF No. 16-4 at 4. "Cohorting is an infection-prevention strategy which involves housing detainees together who were exposed to a person with an infectious organism but are asymptomatic." Farabaugh Decl. ¶ 14, ECF No. 16-3 at 3; *see also* Ivens Decl. ¶ 15, ECF No. 16-4 at 4. "This practice lasts for the duration of the COVID-19 incubation period of 14 days, because individuals with COVID-19 and other communicable diseases can be contagious before they develop symptoms and can serve as undetected source patients." Farabaugh Decl. ¶ 14, ECF No. 16-3 at 3. "All meals, medical, recreation, and programming services are provided to these detainees on-unit, further protecting against the risk of exposure and infection." Ivens Decl. ¶ 16, ECF No. 16-4 at 4. "In addition, all detainees in a cohort unit[] [sic] only attend recreation with detainees in the same cohort." *Id*. "Non-emergency medical and dental services which cannot be provided on the unit have been suspended." *Id*. "Those that show onset of fever and/or respiratory illness are referred to a medical

provider for evaluation." Farabaugh Decl. ¶ 14, ECF No. 16-3 at 3. "Cohorting is discontinued when the 14-day incubation period completes with no new cases." *Id*.

"The IHSC [m]edical [s]taff which manages both males and females, provides daily access to sick calls in a clinical setting and has an onsite medical infirmary, mental health and dental health services with the ability to admit patients at the local hospital for mental or medical health care." Beckhelm Decl. ¶ 11, ECF No. 16-2 at 4; *see also* Farabaugh Decl. ¶ 14, ECF No. 16-3 at 3-4. "The IHSC medical staff provide education on COVID-19 to staff and detainees to include the importance of hand washing and hand hygiene, covering coughs with the elbow instead of with hands, and requesting to seek medical care if they feel ill." Beckhelm Decl. ¶ 18, ECF No. 16-2 at 5; *see also* Farabaugh Decl. ¶ 20, ECF No. 16-3 at 5.

"CoreCivic owns and manages OMDC and staffs the custodial elements of OMDC except for the medical staff." Farabaugh Decl. ¶ 5, ECF No. 16-3 at 2; *see also* LaRose Decl. ¶ 7, ECF No. 16-5 at 2. "CoreCivic supplies [personal protective equipment] to detainees and gloves to those performing sanitation duties." Beckhelm Decl. ¶ 12, ECF No. 16-2 at 4. "Masks were first offered to detainees on April 10, 2020." LaRose Decl. ¶ 82, ECF No. 16-5 at 18. "Detainees are not required to utilize masks if they do not wish to; however, they are encouraged to do so – and have been educated as to the recommendations and use of the same." *Id*. at ¶ 84, ECF No. 16-5 at 18. "OMDC … offer[s] all detainees facial masks[] without cost." *Id*. at ¶ 82, ECF No. 16-5 at 18. "[I]f a detainee asks unit staff for a new mask because his/her mask is soiled or no longer usable, detainees are provided with new masks." *Id*. at ¶ 83, ECF No. 16-5 at 18. "[M]asks are provided upon request without requirement that the prior mask be exchanged for the new one." *Id*. "In conjunction with distribution of facial masks to the detainee population, unit staff have provided detainees with education on proper wearing, handling, and disposal of masks." *Id*. at ¶ 85, ECF No. 16-5 at 18.

"OMDC has enhanced its already robust sanitation practices in response to COVID-19." *Id*. at ¶ 106, ECF No. 16-5 at 25. "CDC recommended cleaning and disinfection

above and beyond normal activity have been implemented." Beckhelm Decl. ¶ 14(b), ECF No. 16-2 at 5. "In the normal course of operation, OMDC detainees are provided with facility-approved soap and EPA-registered sanitation supplies to clean their immediate living areas on a daily basis." LaRose Decl. ¶ 115, ECF No. 16-5 at 27. "In response to COVID-19, detainees are provided access to extra cleaning supplies and disinfectant chemicals to clean their cells/immediate living areas." *Id.* at ¶ 116, ECF No. 16-5 at 27. "Every pod has also established frequent deep cleaning processes, where extra disinfection is performed on 'high touch' areas and those areas that could foster the spread of pathogens, including showers, door handles, day room surfaces, floors, detainee kiosks, telephones, hand rails, etc." *Id.* at ¶ 118, ECF No. 16-5 at 27. "During Town Hall meetings, detainees are instructed on how to safely sanitize the common area surfaces that they may use during the day before and after use—such as detainee telephones and kiosks." *Id.* at ¶ 109, ECF No. 16-5 at 25.

"All staff have been instructed to disinfect their works areas, including 'high touch' areas like door handles, call buttons, telephones, surfaces, and counters, throughout the day." *Id.* at ¶ 120, ECF No. 16-5 at 27. "All keyboards and staff equipment (including keys, portable radios, handcuffs, etc.), as well as all equipment used by detainees (including cleaning equipment and food service equipment) are disinfected multiple times per day." *Id.* at ¶ 120, ECF No. 16-5 at 27-28.

"Liquid soap and electric hand dryers are available in OMDC living units that have communal restroom facilities." *Id.* at ¶ 110, ECF No. 16-5 at 25. "The administration is encouraging both staff and [detainees] to use these tools often and liberally." Beckhelm Decl. ¶ 14(a), ECF No. 16-2 at 4. "Soap dispensers are checked frequently and each pod has liquid soap on hand for refill during frequent checks or upon advisement from detainees that a refill is needed." LaRose Decl. ¶ 110, ECF No. 16-5 at 25. "OMDC continues its practice of issuing hygiene products to detainees twice a week." *Id.* at ¶ 111, ECF No. 16-5 at 25. "Issued hygiene products include bar soap, toothpaste, shampoo, lotion and toilet paper." *Id.* "[F]rom March 4, 2020 to April 23, 2020, OMDC issued detainees 23,300 bars

of soap free of charge." *Id*. at ¶ 112, ECF No. 16-5 at 26. "During that same time period, detainees purchased 996 bars of soap from the commissary …." *Id*.

### d. Immigration Proceedings

"The Executive Office for Immigration Review (EOIR) continues to conduct immigration court, including bond and merit hearings through video-teleconference (VTC) from the downtown San Diego EOIR court." *Id*. at ¶ 20, ECF No. 16-2 at 5. Immigration and Customs Enforcement "continues to process bond and custody release documentation through the downtown San Diego EOIR bond unit." *Id*. at ¶ 22, ECF No. 16-2 at 6. "Due to the current health and public safety concerns, the individuals are not released until they are medically cleared by IHSC." *Id*. "Medical clearance is conducted the same day bond or release orders are processed." *Id*.

## III. DISCUSSION

To succeed on a habeas petition, a petitioner must show that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241.

### a. Reasonable Relation to Legitimate Government Purpose

Petitioners Hernandez and Del Cid contend that their continued detention is not reasonably related to any legitimate governmental goal. Petitioners Hernandez and Del Cid contend that "Respondents' interests in ensuring Petitioners do not abscond or endanger the public could readily be achieved through alternative and less potentially deadly means …." (ECF No. 1 at 29-30). Respondents contend that Petitioner Hernandez has been "denied release on bond" because he "presents a danger to the community due to his criminal history …." (ECF No. 16 at 5, 7). Respondents contend that Petitioner Del Cid's claim for habeas relief "ha[s] been rendered moot" because Petitioner Del Cid has been "granted parole upon posting a $15,000 bond." *Id*. at 7, 17.

8 U.S.C. § 1231(a)(6) states that

> An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained

11

3:20-cv-00744-WQH-AGS

> beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

8 U.S.C. § 1231(a)(6). Individuals detained pursuant to immigration violations are civil detainees. *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). "[U]nder the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979) (citations omitted). "*Bell*'s focus on 'punishment' does not mean that proof of intent (or motive) to punish is required for a pretrial detainee to prevail on a claim that his due process rights were violated." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015) (emphasis in original). "Rather, … a pretrial detainee can prevail by providing only objective evidence that the challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose." *Id.* at 2473-74 (citations omitted). In other words, conditions are punitive when they "are employed to achieve objectives that could be accomplished in so many alternative and less harsh methods …." *Jones v. Blanas*, 393 F.3d 918, 932 (9th Cir. 2004) (citation omitted).

The Supreme Court has recognized the detention of individuals pending their removal proceedings as rationally related to the legitimate governmental interest of ensuring their appearance for their deportation proceedings and preventing danger to the community. *See Zadvydas*, 533 U.S. at 690. The Supreme Court "has recognized detention during deportation proceedings as a constitutionally valid aspect of the deportation process." *Demore v. Kim*, 538 U.S. 510, 523 (2003). On March 10, 2020, Petitioner Hernandez was denied release on bond because the immigration judge found that he is a danger to the community.[1] On April 23, 2020, Petitioner Del Cid was granted parole with a bond set at $15,000.[2] The Court cannot conclude that the continued detention of Petitioners Hernandez and Del Cid "is not rationally related to a legitimate governmental

---

[1] Petitioner Hernandez does not challenge this determination in the Petition.
[2] Petitioner Del Cid does not challenge the amount of the bond in the Petition.

objective or that it is excessive in relation to that purpose." *Kingsley*, 135 S. Ct. 2466, 2473-74 (citations omitted).

### b. Reasonable Safety of Detainees

Petitioners contend that their continued detention violates their substantive due process rights pursuant to the Fifth Amendment. Petitioners contend that Respondents have violated Petitioners' "freedom from unlawful punishment and from cruel and unusual punishment and conditions of confinement." (ECF No. 1 at 25) (emphasis omitted). Petitioners contend Respondents have failed to "assum[e] responsibility for [their] safety and well-being." *Id*. at 30. Petitioners contend that their "continued detention at [OMDC] exposes them to an inevitable COVID-19 infection …." *Id*. at 27. Respondents assert that Petitioners have received adequate medical care at OMDC. Respondents assert that Petitioners are "not [housed] in overcrowded spaces" and are able "to maintain [social] distancing" at OMDC. (ECF No. 16 at 12).

Due process imposes a duty on the government "to assume some responsibility for [the] safety and general well-being" of persons it takes into its custody. *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 199-200 (1989) (citation omitted). The government can consequently be held liable for a due process violation where a government official affirmatively places individuals, with deliberate indifference to their health or safety, in a position of known danger "which he or she would not have otherwise faced." *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1061 (9th Cir. 2006) (citing *DeShaney*, 489 U.S. at 197, 201). A plaintiff in custody must show that government officials acted in an objectively unreasonable manner that "put the plaintiff at substantial risk of suffering serious harm …." *Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016)). The Supreme Court has held that prison officials cannot "ignore a condition of confinement that is sure or very likely to cause serious illness and needless suffering the next week or month or year." *Helling v. McKinney*, 509 U.S. 25, 33 (1993) (citation omitted).

13

3:20-cv-00744-WQH-AGS

The evidence in the record shows that Petitioners Hernandez and Del Cid have access to adequate medical facilities. Petitioner Hernandez has not reported any symptoms compatible with COVID-19 during his detention at OMDC. On March 25 and April 14, 2020, Petitioner Del Cid was seen by a registered nurse at OMDC, provided medication, and cleared to return to her housing unit. The evidence in the record shows that the facility has taken adequate steps to respond to the COVID-19 outbreak. OMDC is operating at about half capacity. Practices have been implemented to promote the maintenance of six feet of physical distance among individuals (detainees and staff members) at OMDC. Detainees are offered masks and encouraged to use them. Detainees are provided gloves, cleaning supplies, and disinfectants. Petitioners fail set forth evidence that Respondents are violating Petitioners' substantive due process rights by failing to respond to the COVID-19 pandemic. The Court cannot conclude that Respondents have failed "to assume some responsibility for [the] safety and general well-being" of Petitioners. *DeShaney*, 489 U.S. at 199-200 (citation omitted). The Court cannot conclude that Respondents have acted in an objectively unreasonable manner that "put[s] [Petitioners] at substantial risk of suffering serious harm …." *Castro*, 833 F.3d at 1071. The Court concludes that Petitioners' continued detention violates neither "the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241.

## IV. CONCLUSION

IT IS HEREBY ORDERED that the Ex Parte Motion for a Temporary Restraining Order filed by Petitioners Jose Hernandez Hernandez and Elsy Veronica Del Cid Quijada (ECF No. 8) is DENIED.

IT IS FURTHER ORDERED that the Motion to File Documents Under Seal filed by Respondents (ECF No. 17) is GRANTED.

IT IS FURTHER ORDERED that the Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 filed by Petitioners Jose Hernandez Hernandez and Elsy Veronica Del Cid Quijada (ECF No. 1) is DISMISSED. The Clerk of the Court shall enter judgment in favor of Respondents and against Petitioners.

Dated: June 1, 2020

Hon. William Q. Hayes
United States District Court